### A08A0226. DEAN v. THE STATE.

(665 SE2d 406)

BARNES, Chief Judge.

Following the denial of his motion for a new trial, Harry Lamar Dean, Jr., appeals his convictions for two counts of party to the crime of armed robbery. Dean contends that: (1) the trial court's decision to admit his two pre-trial statements violated his Fifth Amendment right against self-incrimination; (2) the jury was not properly instructed on how to evaluate the voluntariness of his confession; (3) the trial court erred in admitting similar transaction evidence that Dean had confessed to being involved in the commission of a third, uncharged robbery without corroborating evidence; and (4) the trial court erred in denying his request for a jury instruction on theft by receiving stolen property. For the reasons that follow, we affirm.

Viewed in support of the verdict, the record shows that Dean, an Air Force airman stationed at Robins Air Force Base in Warner Robins, had been gambling regularly since 2003 on machines located at the Dollar Store. He became angry because he had lost a significant amount of money on the machines. He and a fellow airman decided to rob the store because he thought the store was operating illegally and that other victims would not call the police. Dean drove the accomplice to the store, but did not go inside because the owner and other customers knew him.

The two successfully robbed the store twice, once in February 2006 and again in March 2006. On their third attempt, Dean went into the store and pretended to play the gambling machines, and

when the owner unlocked the door to let him out, the accomplice came in with a gun. The owner and accomplice got into a scuffle before the accomplice robbed the store and left. Dean contacted the accomplice and told him that police had arrived and that he should hide. Police assumed Dean was a witness and did not know that he was involved. The accomplice was apprehended a short time later.

The accomplice told the Warner Robins detective in charge of the investigation that Dean gave him a ride into town, but he did not say that Dean was involved in the robbery. The day after the robbery, the detective saw that Dean was also listed on the witness list and contacted the Office of Special Investigations ("OSI") agent at the base who had been assigned to the case, and asked for his assistance in locating Dean. The detective testified that it is customary for civilian law enforcement to notify the military when they arrest or detain servicemen, and he had done so when the accomplice was arrested. He had worked with OSI several times in the past to locate people on the base.

The OSI agent contacted Dean's first sergeant and asked him to bring Dean down to the OSI office. The OSI agent testified that the first sergeant knew about the robbery because the accomplice was also in his unit. The first sergeant was told that he did not need to accompany Dean to the OSI building, so he told Dean's supervising sergeant to escort Dean to the OSI building. The supervising sergeant escorted Dean to the OSI building and then left.

The OSI agent did not participate in the interview, during which only Dean and the detective were present. When Dean arrived in the interview room, the detective told him that he needed to talk with Dean about what he witnessed during the robbery. He had informed Dean on the night of the robbery that he would be asked to come down later to talk with police about the robbery. He told Dean before the start of the interview that he was not in custody. Dean later testified that when he arrived in the room he understood that he was supposed to "just sit down" and talk with the detective.

Dean confessed to the detective about his role in the three robberies, including transporting the accomplice to and from the store and providing him with the handgun used in the third robbery. According to the detective, Dean was free to leave the OSI interview room at any time. The detective could not remember whether the door to the interview room could be opened from the inside or if assistance was needed to exit and did not know if the door to the interview room was locked. Dean testified that at no time during the OSI questioning did he ever ask or attempt to leave, and he was not told that he was not free to leave. According to the detective, Dean was not promised anything or threatened during the interview. The detective testified that "at no point, even when Mr. Dean began to

tell me what happened did I have any intention on taking him into custody at that time. So he was not in custody."

The next day, Dean was escorted by his first sergeant and the supervising sergeant to the police department where Dean gave a second interview to the detective which was videotaped. After informing Dean that he would be charged with a crime, and without reading Dean his *Miranda* rights, the detective proceeded to question Dean in detail about his role in the robberies. The detective explained that he did not give Dean *Miranda* warnings because "he was not in custody; he was released that day."

Dean's attorney filed a motion to suppress Dean's statement to determine the voluntariness of Dean's statements to police. The trial court held a *Jackson-Denno* hearing on the motion, and found Dean's confession voluntary, holding that,

> while Mr. Dean may not have been in a position to tell his first sergeant that he wasn't going to go to the interview, that's not tantamount to custody, because it's not a question of whether he was in the custody of the first sergeant, but whether he was in the custody of the police.

Following his conviction, Dean filed a pro se motion for new trial, which was amended and re-filed by his court-appointed counsel. The trial court subsequently denied the motion, and this appeal ensued.

1. Dean first contends that the trial court erred in admitting his confession because it was the product of a custodial interrogation, he did not waive his *Miranda* rights, and the statement was not voluntarily given. Dean does not argue that the second statement at the police station was inadmissible, but addresses only the admissibility of the first statement at the OSI office.

> To determine if an individual is in custody for purposes of *Miranda*, courts must inquire into whether that person's freedom of movement was restrained to a degree associated with a formal arrest. [Cits.] This inquiry involves an examination of the circumstances surrounding the questioning to determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave. [Cits.]

*Henley v. State*, 277 Ga. 818, 819-820 (2) (596 SE2d 578) (2004). It is not determinative that, when the officers questioned Dean, they may have held an undisclosed suspicion that he was involved in the robberies. *Hodges v. State*, 265 Ga. 870, 872 (2) (463 SE2d 16) (1995). We must examine all of the circumstances surrounding the interrogation in determining whether an accused was in custody when he

gave a statement, and

> the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. Some suspects are free to come and go until the police decide to make an arrest. Thus, if a reasonable person in [Dean's] position would have concluded that he was not under formal arrest and that his freedom was not restrained to the extent associated therewith, then there was no custodial situation triggering the mandate of *Miranda*.

(Citations and punctuation omitted.) *Hightower v. State*, 272 Ga. 42, 43 (2) (526 SE2d 836) (2000).

Here, the questioning took place at the OSI building on Robins Air Force Base. The detective contacted the base to facilitate questioning Dean out of customary practice when dealing with crimes involving airmen, and also because another airman, the accomplice, had been arrested for the robbery and an OSI agent had been assigned to the case. While Dean responded to a general order from his sergeant to go to the OSI building, this request was made by Air Force personnel, not by the police officers. Any lack of discretion as to whether Dean was free to disregard the order resulted from his position in the military, not from anything the police may have done. Moreover, when Dean was interviewed, only he and the detective were present; no military officials were in the room.

Additionally, there is no evidence that the detective limited Dean's right to terminate the questioning and leave at any point. At the time of the first interview, the detective did not suspect Dean. The record contains no indication that Dean "informed the officers that he wanted the interview to end, that he wished to speak with counsel, or that he wished to leave the station. After [he] made his statements, he was [free to leave]." *Robinson v. State*, 278 Ga. 836, 837-838 (2) (607 SE2d 559) (2005). Under this evidence, Dean was not in custody for purposes of *Miranda*.

Dean's argument that before he was interviewed he should have been read Article 31 (b) of the Uniform Code of Military Justice informing him of his right to remain silent, and the purpose for which any statement could be used, is likewise meritless. See 10 USC § 831 (b). Article 31 by its terms only applies to military interrogations of military criminal suspects. In this case, as Dean was charged with a civilian crime in a civilian court, we analyze the admissibility of his statement under civilian law, not the Uniform Code of Military Justice.

Regardless of the custodial or noncustodial nature of the interview, "for [Dean's] statements to be admissible, they must be

voluntary." *Vergara v. State*, 283 Ga. 175, 178 (1) (657 SE2d 863) (2008). Under the provisions of OCGA § 24-3-50, "[t]o make a confession admissible, it must have been made voluntarily, without being induced by another by the slightest hope of benefit or remotest fear of injury." Dean's reliance on the nine-factor analysis for determining the voluntariness of his statement as set forth in *Reinhardt v. State*, 263 Ga. 113, 115 (3) (b) (428 SE2d 333) (1993), is misplaced. Our Supreme Court has recently clarified that "the explicit nine-factor analysis set forth in . . . *Reinhardt*[ ] applies only to the confessions of juveniles· and not to those of adults. [Cits.]" *Vergara*, supra, 283 Ga. at 177-178 (1). Thus, "[b]ecause [Dean was over 18] at the time of his statements, they are admissible if, considering the totality of the circumstances, they were made voluntarily, without being induced by hope of benefit or coerced by threats." (Citation and punctuation omitted.) Id. at 178 (1).

Dean argues that the facts that he was not informed of his *Miranda* rights, was held incommunicado, and military personnel were involved, support his contention that his confession was not voluntary. The trial court rejected these arguments and that ruling is supported by the record. As noted above, Article 31 applies only to military interrogation of criminal suspects, and Dean was not a suspect when he was questioned. There was also no evidence that Dean asked to leave and was unable to do so or that the military was acting in conjunction with the police. Finally, Dean does not contend that he made the confession with any "hope of benefit" as contemplated by the statute, nor is there any evidence suggesting that police coerced him into confessing by suggesting that he do so, or threatened him with harm should he refuse.

Based on the totality of the circumstances, the trial court did not err in holding that Dean's confession was not involuntary under OCGA § 24-3-50.

2. Dean next argues that the trial court did not properly instruct the jury on the factors to evaluate the voluntariness of Dean's statement because the pattern charge on illegal detention was not given. The record reflects that Dean neither requested the charge nor excepted to the charge as given. See *Arrington v. State*, 224 Ga. App. 676, 677 (2) (482 SE2d 400) (1997) (announcement of no exception to charge and failure to reserve objections waives charging errors). Dean, therefore, has waived this objection.

Further, our review of the charge revealed that the trial court appropriately charged the jury on the voluntariness of his confession.

The trial court instructed the jury that

[t]o be voluntary, a statement must be freely and willingly given with complete understanding and without coercion,

> duress, threats, use of violence, fear of injury or any suggestions or promises of leniency or reward. A statement induced by the slightest hope of benefit or the remotest fear of injury is not voluntary. To be voluntary, a statement must be the product of a free will and not under compulsion or any necessity imposed by others.

Even assuming, as Dean maintains, that the trial court should have given additional instructions on the voluntariness of an inculpatory statement, the omission would provide no basis for reversal of Dean's convictions because of the evidence establishing that Dean's statements were voluntary and the overwhelming evidence of his guilt. *Robinson v. State*, 272 Ga. 752, 754 (2) (533 SE2d 718) (2000). We discern no error.

3. Dean next contends that the trial court erred by admitting evidence of his confession to a third robbery as a similar transaction. He argues that because no evidence established the robbery other than his confession, it was error to admit it.

Dean confessed to committing three robberies, the two he was charged with and a third uncharged robbery of the same store. The trial court admitted the similar transaction for the "purpose of establishing scheme and course of conduct."

The admissibility of similar transaction evidence is contingent upon three affirmative showings.

> First, the State must demonstrate that the evidence is not brought forth to raise an improper reference to character but, rather, for an appropriate purpose deemed an exception to the general rule prohibiting this type of evidence; second, the State must show sufficient evidence to establish that the accused committed the independent offense or act; and third, the State must demonstrate a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter. [Cit.]

*Huff v. State*, 248 Ga. App. 233 (546 SE2d 24) (2001).

Dean asserts that just as "[a] prior similar transaction may not be proved solely by the uncorroborated testimony of an accomplice," *Hill v. State*, 236 Ga. 831, 833 (225 SE2d 281) (1976), a similar transaction cannot be proved by his uncorroborated confession. OCGA § 24-3-53 provides that, "[a] confession alone, uncorroborated by any other evidence, shall not justify a conviction." A prior similar transaction, however, does not require that the accused be convicted of the similar transaction to be admitted for use in this limited

YALE LAW LIBRARY

purpose. *Howard v. State*, 220 Ga. App. 267, 269 (469 SE2d 396) (1996), overruled on other grounds, *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999). Further, unlike the uncorroborated testimony of an accomplice, which is often self-serving, a confession is made against the accused's own self-interest. The inquiry must be whether the similar transaction evidence was sufficiently similar to the current crime and of substantial relevance to the issues being tried. Dean's confession related to the first robbery satisfied this inquiry in the affirmative. That his confession was uncorroborated would be relevant in affirming a conviction for that crime, which would have to be proven beyond a reasonable doubt, see OCGA § 24-3-53, but that is not the case here.

We find no error in the admission of the similar transaction evidence.

4. Dean last contends that the trial court erred in not charging the jury on theft by receiving stolen property. He argues that the unique circumstances of his case dictate such a charge because he did not actively commit the robberies or facilitate their commission but merely came into possession of stolen property.

Theft by receiving stolen property is not a lesser included offense of armed robbery but is a separate offense proved by an entirely different set of facts. *Bethel v. State*, 232 Ga. App. 82, 85 (2) (500 SE2d 595) (1998). " 'A defendant is not entitled to an instruction on an offense for which he has not been charged that is not a lesser included charge.' [Cit.]" Id. The evidence showed that Dean planned and strategized the robberies with the accomplice, drove his accomplice to the last robbery, and provided him with a weapon. Therefore, the evidence did not reasonably raise the issue that Dean may have been guilty of theft by receiving, see *Jackson v. State*, 213 Ga. App. 170, 171 (2) (b) (444 SE2d 126) (1994), but established that he was a party to armed robbery.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JULY 11, 2008.

*A. James Rockefeller*, for appellant.
*Kelly R. Burke, District Attorney, Jason E. Ashford, Assistant District Attorney*, for appellee.