**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**April 19, 2017**

# In the Court of Appeals of Georgia

A17A0233. DIXON v. THE STATE.

SELF, Judge.

Eric Dixon appeals from his convictions of one count of aggravated child molestation and four counts of child molestation. He argues that the trial court erred in (1) admitting evidence qualifying as "another offense of sexual assault" under OCGA § 24-4-413 or "another offense of child molestation" under OCGA § 24-4-414; and (2) declining to exercise its discretion to grant a new trial because the verdict was contrary to the weight of the evidence under OCGA § 5-5-21. For the reasons explained below, we affirm.

On appeal from a criminal conviction, the standard for reviewing the sufficiency of the evidence "is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This Court does not reweigh evidence

or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013). So viewed, the record shows that the female victim, who was 15 years old at the time of the trial, testified that Dixon dated her mother. When the victim was around nine to ten years old, Dixon touched her breasts, but she never told her mother.

Another incident occurred when the victim was lying on the floor and her mother was asleep on the couch. Dixon placed a blanket over the victim, laid down beside her, and touched her vaginal area with his hand underneath her clothing. Her mother did not awaken, and the victim did not tell her what Dixon had done.

On a different occasion, Dixon instructed the victim to "suck his penis" in the kitchen after her mother went to the store. She explained that she did not want to do it, but "every time he would pull me forward, I jerked away and he kept on doing it and I had did it and he wanted me to do it more and I kept on jerking away and pulling my head away and I didn't do it anymore." On this same occasion, Dixon made her touch his penis. The victim explained that Dixon told her "he would hurt [her] or [her] family" if she told or did not do what he wanted.

2

When the victim later told her aunt about Dixon's conduct, the aunt took her to the police, where the victim spoke with a detective. She subsequently gave a video-recorded forensic interview at the Children's Advocacy Center, and the State played the video for the jury during the trial. At the beginning of the interview, in response to a question about why she was being interviewed, the victim stated it was "about me being raped or sexual touch." She described the incident in the kitchen as happening while her mother "was passed out on the couch." At trial, the victim admitted that this last statement was inconsistent with her testimony that her mother was at the store when the incident in the kitchen occurred.

At one point during the interview, the victim stated that her mother was doing "really bad right now" and would leave her at home alone when she would go out. She explained that this was why she wanted to go live with her father. She also described a meeting with both of her parents a few days before the interview in which her mother said she did not know about Dixon's behavior. According to the victim, her mother "tried to lie about it," because the mother also stated that the victim's grandparents knew about it. According to the victim, her mother finally admitted that she did know about Dixon's behavior, but the victim did not know how her mother knew about it.

At trial, the victim conceded that her version of events in the forensic interview made it appear like Dixon's abuse occurred "every time her mom left" over a two-year period and that this was not true. She also acknowledged that her aunt no longer allowed her to live in her home because of a dispute relating to lying and that she was currently living with her mother again after a stint in foster care. Finally, she denied telling another adult that Dixon had penetrated her vagina with his penis.[1]

The victim's grandmother testified that it was her personal opinion that the victim's character was one of untruthfulness. According to the grandmother, the victim confessed to her that she had lied about Dixon saying "something out of the way to her." It is unclear from the grandmother's testimony what is meant by saying "something out of the way." According to the victim, Dixon was good friends with her grandparents.

The State also introduced evidence of another offense of child molestation or sexual assault. W. T., who was 23 years old at the time of the trial, testified that when he was between the ages of six and eleven years old, Dixon, who was married to his mother, began touching his genitals. Over time, Dixon began having anal sex with W.

---

[1] According to the investigating police officer, this adult, who did not testify at trial, told him that the victim revealed to her that Dixon had done so on more than one occasion.

4

T., and W. T. performed oral sex upon Dixon. W. T. testified that Dixon threatened to take him into the woods and shoot him if he told anyone what they did.

When W. T. told his mother what was happening in the fourth or fifth grade, Dixon was waiting for him when he came home from school and yelled at him and accused him of lying. Dixon then took W. T. and his mother to W. T.'s school "and then started yelling at all the counselors and people in the front office" about the allegations. At that point in time, W. T. had only told his mother about Dixon's sexual abuse. After this incident at the school, "nothing ever happened and no investigation was launched[.]" W. T. explained that "[i]t was just a whole ordeal and then [Dixon] left for a while and then came back." When W. T. turned 11 years old, the abuse started slowing down and it ultimately stopped after his mother ended the relationship.

The investigating police officer testified that school counselors are mandatory reporters who are required to notify law enforcement of allegations of child molestation. He acknowledged, however, that "[t]here are times when it doesn't get reported by [a] mandated reporter. . . ." He explained that he did not do any investigation of W. T.'s allegations of molestation because they took place in a

5

different county and that he therefore referred W. T. to the sheriff's office in that county.

1. Dixon maintains that the "trial court erred by allowing uncorroborated and unduly probative testimony [by W. T.] which was substantially prejudicial to Dixon's defense." We disagree.

As this case was tried after July 1, 2013, the effective date of Georgia's new Evidence Code, Ga. L. 2011, p. 99 §101, the State sought to introduce W. T.'s testimony pursuant to OCGA § 24-4-404 (b), OCGA § 24-4-413 (b), and OCGA § 24-4-414 (b).

OCGA § 24-4-413 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." Id. An offense of sexual assault includes sodomy. See OCGA § 24-4-413 (d) (1); OCGA § 16-6-2 (a) (1).

OCGA § 24-4-414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." An "offense of child molestation"

6

is defined as "any conduct or attempt or conspiracy to engage in . . . [a]ny crime that involves contact between any part of the accused's body . . . and the genitals or anus of a child. . . ." OCGA § 24-4-414 (D) (2).

These provisions supersede the provisions of OCGA § 24-4-404 (b)[2] in sexual assault and child molestation cases. See *Steele v. State*, 337 Ga. App. 562, 566 (3), n. 5 (788 SE2d 145) (2016); *Dority v. State*, 335 Ga. App. 83, 95 (3) (780 SE2d 129) (2015), and "create a 'rule of inclusion,' with a strong presumption in favor of admissibility as [each] provides that such evidence 'shall be admissible.'" (Citations omitted.) *Steele*, supra, 337 Ga. App. at 566 (3). Thus, the State can seek to admit evidence under these provisions for any relevant purpose, including propensity. Id.; *Dority*, supra.

(a) Dixon contends that W. T.'s testimony should not have been admitted because it was uncorroborated and the State did not "produce any evidence [that W. T.'s] allegations were ever reported or investigated." As Georgia's new evidence rules mirror their federal counterparts, our appellate courts "look for guidance to the decisions of the federal appellate courts, particularly the United States Supreme Court

_____

[2] OCGA § 24-4-404 (b) provides the general rule for the admission of evidence of "other crimes, wrongs, or acts. . . ."

and the Eleventh Circuit, interpreting the federal rules in question." *Davis v. State*, 299 Ga. 180, 185 (2) (a) (2) (787 SE2d 221) (2016). An examination of this guidance shows that corroboration,[3] criminal charges, or a conviction are not required for the admission of other acts evidence under the Federal Rules of Evidence. See *United States v. Bush*, Case No. 5-15401, 2016 U. S. App. LEXIS 22878 at *3-4 (11th Cir. 2016) ("[a] single witness's uncorroborated testimony can provide an adequate basis for a jury to find that the prior act occurred"); *United States v. Guidry*, 456 F3d 493, 501-502 (III) (A) (1) (5th Cir. 2006) (terms "offense" and "crime" in Federal Rule of Evidence 413 do not limit the evidence to that which is proven by conviction); *Johnson v. Elk Lake School Dist.*, 283 F3d 138, 151 (III) (D) (3rd Cir. 2002) (uncharged conduct admissible under Federal Rules of Evidence 413-415). Indeed, a prior acquittal of a criminal charge will not necessarily preclude admission of other act evidence under the Federal Rules of Evidence. See *United States v. Smith*, 148

---

[3] As this issue is not currently before us, we express no opinion on whether uncorroborated *accomplice* testimony may be used to prove other acts under Georgia's new Evidence Code. See *Bradshaw v. State*, 296 Ga. 650, 653 (2) (769 SE2d 892) (2015) (corroboration of accomplice testimony required under new Evidence Code in order for it to be sufficient to sustain a conviction); *Dean v. State*, 292 Ga. App. 695, 700 (665 SE2d 406) (2008) (under Georgia's former Evidence Code "a prior similar transaction may not be proved solely by the uncorroborated testimony of an accomplice") (punctuation omitted).

Fed. Appx. 867, 870 (11th Cir. 2005). Finally, a trial court "need not make a preliminary finding that the alleged prior similar conduct in fact occurred before admitting it into evidence." *United States v. Rodriguez*, 917 F2d 1286, 1290, n. 7 (11th Cir. 1990), vacated in part on other grounds, 935 F2d 194, 196 (11th Cir. 1991). Instead, a trial court's decision to admit other act evidence will be affirmed "if a jury could find by a preponderance of the evidence that the defendant committed the act." *Bush*, supra at * 3.

Because a jury could have concluded by a preponderance of the evidence in this case that Dixon committed the acts described by W. T., we find no merit in this portion of Dixon's argument on appeal. See *Smart v. State*, 299 Ga. 414, 419 (2) (c) (788 SE2d 442) (2016) (noting eyewitness testimony sufficient proof for jury to conclude that defendant committed acts admitted under OCGA § 24-4-404 (b)).

(b) Dixon also argues that the trial court erred by failing to conclude that the probative value of W. T.'s testimony was "substantially outweighed by its danger of unfair prejudice." We disagree.

Our analysis of this argument is governed by OCGA § 24-4-403, which provides: "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

9

the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Georgia courts have already established that "[this determination lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." (Punctuation omitted.) *Eubanks v. State*, 332 Ga. App. 568, 570 (1) (774 SE2d 146) (2015). See also *Bradshaw v. State*, 296 Ga. 650, 657-658 (3) (769 SE2d 892) (2015).

> The application of the [OCGA § 24-4-403] test is a matter committed principally to the discretion of the trial courts, but as we have explained before, the exclusion of evidence under [OCGA § 24-4-403] is an extraordinary remedy which should be used only sparingly. The major function of [OCGA § 24-4-403] is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.

(Citations and punctuation omitted.) *Smart*, supra, 299 Ga. at 418 (2) (b). "In close cases, the balance should be struck in favor of admissibility. . . ." *Gerber v. State*, 339 Ga. App. 164, 177 (3) (b) (793 SE2d 131) (2016).

While it is clear that OCGA § 24-4-403 applies to evidence admitted under OCGA §§ 24-4-413 and 24-4-414, and their corresponding federal counterparts,

10

neither Georgia courts nor the Eleventh Circuit have expressly decided whether evidence admitted under these Code provisions "should be evaluated under a different type of Rule 403 balance that weighs in favor of admission." *United States v. Brimm,* 608 Fed. Appx. 795, 799, n. 6 (11th Cir. 2015) (declining to address issue based upon its finding that trial court did not abuse its discretion under test applied to other act evidence admitted pursuant to Rule 404 (b) that is more favorable to the defendant); *Eubanks*, supra, 332 Ga. App. at 570 (1) (analyzing application of OCGA § 24-4-403 under standard applied to evidence admitted under OCGA § 24-4-404 (b) and Federal Rule of Evidence 404 (b)). "Over time, the [federal] circuit courts have developed distinct approaches to the application of the Rule 403 balancing test in determining the admissibility of prior sexual misconduct evidence under Rules 413-415." Palumbo, "Ensuring Fairness and Justice Through Consistency: Application of the Rule 403 Balancing Test to Determine Admissibility of Evidence of a Criminal Defendant's Prior Sexual Misconduct under the Federal Rules," 9 Seton Hall Cir. Rev. 1, 12 (2013). See also Bu, "Searching for a Better Constitutional Guarantee for the FRE 413-415: The Conflict Among Circuits in Applying the FRE 403 Balancing Test and a New Solution," 16 U. Ill. L. Rev. 1905, 1915-1916 (2016).

Like the Eleventh Circuit in *Brimm*, supra, however, we need not address this question as the trial court did not abuse its discretion under the typical balancing test applied to evidence admitted under OCGA § 24-4-404 (b). When reviewing whether a trial court has abused its discretion in its application of the balancing test in OCGA § 24-4-403, it is important to bear in mind the distinction between relevance and probative value.

> Relevance and probative value are related, but distinct, concepts. Relevance is a binary concept — evidence is relevant or it is not — but probative value is relative. Evidence is relevant if it has "*any tendency*" to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. See Milich, Georgia Rules of Evidence § 6.1 (2015) ("Probative value refers to the strength of the connection between the evidence and what it is offered to prove."). Probative value also depends on the marginal worth of the evidence — how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. See 2 Weinstein's Fed. Evid. § 404.21 [3] [a] ("[T]he availability of other,

12

less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence.") And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence. See Mueller & Kirkpatrick, supra, § 4.21 ("The more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point.").

(Citations and footnotes omitted; emphasis in original.) *Olds v. State*, 299 Ga. 65, 75-76 (2) (786 SE2d 633) (2016).

In this case, the State's need for the evidence was great based upon Dixon's attacks on the victim's credibility, the lack of any physical evidence, and the victim's delayed outcry. See *Eubanks*, supra, 332 Ga. App at 570 (1). With regard to the overall similarity of Dixon's acts, each involved inappropriate sexual contact between Dixon and a child of similar age to whom Dixon gained access through a relationship with the child's mother. While the victims were of a different gender, this Court previously recognized in a case involving the application of our former Evidence Code that "[t]he sexual abuse of young children, regardless of the sex of the victims or the nomenclature or type of acts or other conduct perpetrated upon them, is of sufficient similarity to make the evidence admissible. This is because sex crimes

against children require a unique bent of mind." (Citations and punctuation omitted.) *Gunn v. State*, 300 Ga. App. 229, 232 (3) (684 SE2d 380) (2009). As in *Brimm*, supra, W. T.'s "testimony was highly probative of [Dixon]'s motive." 608 Fed. Appx. at 799 (I) (D). See also *Eubanks*, supra, 332 Ga. App. at 570 (1). The passing of 7-13 years between Dixon's molestation of W. T. and the victim in this case does not mandate the conclusion that the trial court abused its discretion in its application of the OCGA § 24-4-403 balancing test, particularly where Dixon's access to the children was based upon a relationship with their mother. Id. And finally, the trial court's limiting instruction to the jury in this case mitigated the risk of undue prejudice. *Brimm*, supra, 608 Fed. Appx. at 800; *Eubanks*, supra, 332 Ga. App. at 570 (1). Under these circumstances, we find no abuse of the trial court's discretion in admitting the evidence of Dixon's prior molestation of a minor victim.

2. Dixon argues that the trial court erred by failing to exercise its discretion under OCGA § 5-5-21 to grant a new trial because the verdict was "decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding." Id.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to

the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a "broad discretion to sit as a 'thirteenth juror.'"

(Citation and punctuation omitted.) *Allen v. State*, 296 Ga. 738, 740 (2) (770 SE2d 625) (2015).

In this case, the record shows that Dixon filed a motion for new trial in which he alleged that the verdict was "contrary to law," "contrary to the evidence," "strongly against the weight of the evidence," and "not supported by the weight of the evidence." In the hearing on the motion for new trial, Dixon argued that "neither one of these victims were credible" and asked "the Court to find that [the verdict] was against the weight of the evidence and grant a new trial."

At the conclusion of the hearing, the trial court stated: "[Y]ou know, the way I look at it there is a jury instruction that says they're to take these conflicts and do it themselves which one is believable and not believable. While there were inconsistencies, I'm just going to stick by what the jury did. They are the ones that weighed the evidence. I'll deny your motion." It then entered the following one-sentence written order on the same day: "The above case having come on to be heard

15

by this Court on the Defendant's Motion for New Trial on July, 13, 2016 and, after hearing the argument of counsel, the Defendant's motion is hereby DENIED."

(a) Contrary to Dixon's argument on appeal, neither the trial court's order nor its statement during the hearing demonstrate that it failed to exercise the discretion afforded to it under OCGA § 5-5-21. The Supreme Court of Georgia has approved the use of summary orders denying motions for new trial, stating

> Although the order did not explicitly state that the court was exercising its broad discretion as the thirteenth juror in deciding the motion, it is well established that [appellate courts] must presume that the trial judge knew the rule as to the necessity of exercising his discretion, and that he did exercise it. We can not assume, in the absence of positive evidence to the contrary, that the judge knowingly declined to exercise his discretion.

(Citation and punctuation omitted.) See *Butts v. State*, 297 Ga. 766, 771-772 (3) (778 SE2d 205) (2015). This presumption applies "unless the language of the order indicates to the contrary and that the trial judge agreed to the verdict against the dictates of his own conscience, merely because he did not feel that he had the duty or authority to override the findings of the jury upon disputed issues of fact." (Citations, punctuation and footnote omitted.) *Jones v. State*, 339 Ga. App. 95, 105 (4) (791 SE2d 625) (2016).

16

Here, the trial court's oral statement that it was "just going to stick by what the jury did," despite the inconsistencies it recognized in the testimony, falls short of the positive evidence necessary to demonstrate that the trial court failed to exercise its discretion. Instead, it was merely the trial court's manner of expressing that it was exercising its discretion against setting aside the jury's verdict. Additionally, "[w]hile a judge's oral statements on the record may provide insight into the intent of [his] subsequent written judgment, any discrepancies between the two must be resolved in favor of the written judgment." (Citation, punctuation and footnote omitted.) *In the Interest of R. W.*, 315 Ga. App. 227, 231 (3) (b) (726 SE2d 708) (2012).

(b) To the extent Dixon argues that the trial court erred by reaching the wrong conclusion in the exercise of its discretion, we cannot consider it. A motion for new trial on this ground "is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court." *Smith v. State*, Ga. (1), Case No. S16A1766, 2017 Ga. LEXIS 36 (February 6, 2017).

*Judgment affirmed. Dillard, P. J., and Ray, J., concur.*

17