**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 25, 2021**

# In the Court of Appeals of Georgia

A21A0982. RAMIREZ-ORTIZ v. THE STATE.

DOYLE, Presiding Judge.

Following his convictions for three counts of child molestation,[1] Daniel Ramirez-Ortiz appeals the denial of his motion for new trial. Ramirez-Ortiz argues that the trial court erred because (1) the evidence was insufficient to support the guilty verdict, (2) trial counsel was ineffective, (3) admission of his police interview and that of the victim constituted plain error, and (4) the trial court erroneously admitted other acts evidence under OCGA §§ 24-4-404 (b), 24-4-413, and 24-4-414. For the reasons that follow, we affirm.

---

[1] OCGA § 16-6-4 (a) (1).

Viewed in the light most favorable to the verdict,[2] the evidence shows that Ramirez-Ortiz rented a room from Paz and Raul Ponce in Gwinnett County. Paz often cared for her five-year-old granddaughter, Y. P. ("the victim"), in the home. On June 30, 2017, the victim told I. G. – Paz's daughter-in-law – that Ramirez-Ortiz touched her, gesturing to "[h]er butt, her vagina, and her breasts." At I. G.'s urging, the victim told her mother, M. M., that Ramirez-Ortiz "touched" her, but she did not specify the location of the touching at that time. The victim later told M. M. that he had touched her "behind" and her breast area.

M. M. called the police the same day as the victim's outcry, and the victim was interviewed by police. Because the victim spoke both English and Spanish, a bilingual detective ("Detective F") assisted with the interview. According to a certified interpreter who reviewed the statement, the victim said that Ramirez-Ortiz touched her buttocks or "pompita" three times, her vagina once, and her chest once.

Approximately a year and a half after the molestation was reported to police, the victim's uncle – Anthony Ponce – asked the victim what had happened. While crying, she told him that Ramirez-Ortiz touched her butt, her vagina, and her breast area. Paz, who was present, yelled at the victim, called her a liar, kicked Anthony out

---

[2] See *Libri v. State*, 346 Ga. App. 420, 421 (816 SE2d 417) (2018).

2

of the house and "threatened [him]," telling him "Don't tell them anything." According to Anthony, his parents were "so supportive" of Ramirez-Ortiz. Anthony later testified at trial that he observed Ramirez-Ortiz "touching [the victim's] shoulders and grabbing her hair and saying really creepy things to her" and touching her low back "pretty close" to her buttocks. Anthony also heard Ramirez-Ortiz tell the victim, "[O]h, you're going to be a beautiful woman."

After observing behavior changes in the victim, including declining school performance, frequent crying, refusal to sleep alone, jumpiness around males, and clinginess, the victim's mother took her to see a therapist who specializes in trauma-focused cognitive behavioral therapy. The victim told the therapist that Ramirez-Ortiz "squeezed her bottom." According to the therapist, the victim said that when she told her grandmother, Paz responded, "He didn't do that. I didn't see it. He didn't do that." Paz also told the victim that Ramirez-Ortiz was in jail and that Paz wanted him to be released.

Ramirez-Ortiz was charged with three counts of child molestation. Prior to trial, the State moved to admit evidence of prior acts against other victims pursuant to OCGA §§ 24-4-404 (b), 24-4-413, and 24-4-414. Following a hearing, the trial

3

court held that evidence of prior acts against three of the other victims was admissible, and it excluded evidence involving a fourth person.

At trial, the State introduced the victim's videotaped statement to police.[3] The State also introduced an audio recording of Ramirez-Ortiz's interview with police, which was also interpreted by Detective F. The victim also testified, stating that Ramirez-Ortiz "touched [her] . . [o]n the front," indicating by pointing at her body.

The police investigator, the victim's therapist, Anthony Ponce, and other witnesses also testified, including three similar transaction witnesses. The first witness, B. M., testified that when she was approximately four years old, Ramirez-Ortiz sat her on his lap and "began to touch [her] inappropriately": he "put his hands on [her] vagina . . . [and] was moving back and forth, like thrusting motions." B. M. could feel his penis on the outside of her clothing on the side of her bottom while he was thrusting.

I. G. testified that in November 2011, at a Thanksgiving gathering, Ramirez-Ortiz touched her inappropriately three times. The first time, I. G. felt him grab her butt, and she assumed it was an accident. Later that same day, he "let himself fall and grabbed [her] again." The third time, he came towards her "really fast" and touched

_____

[3] The State filed a pretrial notice of its intent to admit child hearsay evidence.

her vagina as she bent down to retrieve a baby bag. M. M., the victim's mother, testified that in 2012, Ramirez-Ortiz slapped her buttocks with his hand.

At the conclusion of the trial, the jury found Ramirez-Ortiz guilty on all three counts of child molestation, and he was sentenced to ten years, to serve nine in confinement. Ramirez-Ortiz moved for a new trial, which motion was denied in a detailed order. This appeal followed.

1. Ramirez-Ortiz contends that the evidence was insufficient to sustain his convictions, specifically arguing that there was no evidence that he acted with criminal intent. We disagree.

On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the appellant no longer enjoys the presumption of innocence.[4] When determining the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] The appellate court "does not reweigh evidence or resolve

_____

[4] See *English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

5

conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence."[6]

Pursuant to OCGA § 16-6-4 (a) (1), "[a] person commits the offense of child molestation when such person . . . [d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." "[T]he evidence of the victim alone is sufficient to authorize the jury to find [a defendant] guilty of child molestation. No requirement exists that this testimony be corroborated."[7]

In this case, the victim testified that Ramirez-Ortiz touched her vagina, buttocks, and breasts. This testimony alone is sufficient to support his convictions for child molestation.[8] With regard to intent, we note that "[t]he intent with which an act

---

[6] (Citations and punctuation omitted.) *Hayes v. State*, 292 Ga. 506 (739 SE2d 313) (2013).

[7] (Punctuation omitted.) *Reyes v. State*, 356 Ga. App. 346, 347 (1) (847 SE2d 25) (2020), citing *Spradlin v. State*, 262 Ga. App. 897, 898 (1) (587 SE2d 155) (2003).

[8] See *Reyes*, 356 Ga. App. at 347 (1).

6

is done is peculiarly a question of fact for determination by the jury. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this."[9] Here, the victim testified that Ramirez-Ortiz's touching made her feel "bad," and she cried months later when relaying the incident to her uncle. This authorized an inference that the touching was disturbing to her because it was sexual in nature and not merely incidental or accidental. Given the victim's testimony and outcry, it can be inferred that Ramirez-Ortiz acted with the intent to arouse or satisfy his sexual desires when he touched her breasts, vagina, and buttocks.[10]

2. Ramirez-Ortiz alleges that the trial court committed plain error by admitting the victim's police interview and his own police interview because his inability to cross-examine the bilingual police officer who assisted with interpretation during the interviews violated his Confrontation Clause rights. We find no basis for reversal.

Ramirez-Ortiz concedes that he did not object to the admission of his own police interview and the victim's police interview on Confrontation Clause grounds,

---

[9] (Punctuation omitted.) *Duvall v. State*, 273 Ga. App. 143, 143 (1) (614 SE2d 234) (2005), quoting *Howard v. State*, 268 Ga. App. 558, 559-560 (602 SE2d 295) (2004) (citation omitted).

[10] See *Howard*, 268 Ga. App. at 560. See also *Duvall*, 273 Ga. App. at 143 (1).

so this enumeration must be reviewed for plain error.[11] Under this standard, Ramirez-Ortiz

> must point to an error that was not affirmatively waived, the error must
> have been clear and not open to reasonable dispute, the error must have
> affected his substantial rights, and the error must have seriously affected
> the fairness, integrity[,] or public reputation of judicial proceedings.[12]

As Ramirez-Ortiz points out, Corporal D. W., the lead investigator who conducted the victim's interview, testified that the bilingual detective – Detective F. – who assisted with translation during the interview was not a court-certified interpreter, and Detective F incorrectly translated some of the victim's statements. As a result, Corporal D. W. reviewed the victim's interview with a certified interpreter, and D. W. clarified the misinterpretations at trial. During the trial, defense counsel advised the trial court outside the presence of the jury that although the interpreter who reviewed the victim's statement and that of Ramirez-Ortiz found some

---

[11] See OCGA § 24-1-103 (d) ("Nothing in this Code section shall preclude a court from taking notice of plain errors affecting substantial rights although such errors were not brought to the attention of the court."); *Pender v. State*, 311 Ga. 98, 114 (4) (a) (856 SE2d 302) (2021) (applying plain error standard to the appellant's unpreserved Confrontation Clause claim).

[12] (Punctuation omitted.) *Kemp v. State*, 303 Ga. 385, 397-398 (3) (810 SE2d 515) (2018), quoting *Lupoe v. State*, 300 Ga. 233, 243 (4) (794 SE2d 67) (2016).

inaccuracies and misinterpretations in the translation, "[t]here is nothing material of issue with [Detective F]. [The inaccuracies do] not materially change what [Detective F] states and what's in this detective's report."[13]

Ramirez-Ortiz argues that admission of the victim's statement was plain error because his inability to cross-examine Detective F violated his Confrontation Clause rights. Pretermitting whether it was a violation of Ramirez-Ortiz's Sixth Amendment right to confrontation to admit the victim's statement through Corporal D. W.'s testimony regarding the interpretation by Detective F, Ramirez-Ortiz has failed to establish plain error,[14] given that the victim testified at trial, Ramirez-Ortiz's counsel had the opportunity to cross-examine her, the jury was made aware of the inconsistencies in the interpretation, his trial counsel conceded that the inaccuracies in the translation were not "material," and, although a certified interpreter testified at the motion for new trial hearing that there were errors in Detective F.'s translations,

---

[14] See, e.g., *United States v. Charles*, 722 F3d 1319, 1322-1331 (II) (11th Cir. 2013) (holding that although admission of an officer's testimony regarding an interpreter's statements regarding what the defendant said violated the defendant's Sixth Amendment right to confrontation, the error was not plain because there was no binding precedent holding that the interpreter was the declarant, as opposed to the defendant).

9

there was no evidence that the victim's trial testimony substantively conflicted with the post-trial interpreter's translation of the victim's statement in a way that undermined the verdict.[15]

Similarly, there is no evidence to suggest that Detective F's translation of Rameriz-Cortez's statement was materially incorrect such that the outcome of the trial would have differed or that any error in admitting his statement "seriously affected the fairness, integrity[,] or public reputation of judicial proceedings."[16]

Accordingly, Ramirez-Cortiz has not established plain error, and the trial court did not err by denying his motion for new trial on this basis.

3. Ramirez-Ortiz also contends that trial counsel was ineffective by failing to object to the admission of his statement to police and the victim's police interview on lack of foundation and Confrontation Clause grounds. We find no basis for reversal.

> To prevail on a claim of ineffective assistance of counsel, [a defendant] must prove both deficient performance and resulting prejudice. To establish deficient performance, a defendant must show that his trial counsel performed in an objectively unreasonable way, considering all the circumstances and in the light of prevailing

---

[15] See *Abernathy v. State*, 357 Ga. App. 732, 734 (1) (849 SE2d 489) (2020).

[16] *Kemp*, 303 Ga. at 398.

10

professional norms. To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." We need not address both components of this test if a defendant has not proved one of them.[17]

Pretermitting whether trial counsel was ineffective by not objecting to the admission of the statements, Ramirez-Cortiz has failed to establish prejudice. Trial counsel testified at the motion for new trial hearing that had he objected to the admission of the statements on the basis that Detective F did not testify, the State would have called him as a witness, and I didn't want that to happen. . . . I didn't want the detective to testify so I wasn't going to make the objection." Trial counsel further explained that because the inconsistencies in the translations were "minor . . .[,] I think that would have been an argument without a purpose. I didn't want to give [Detective F] an opportunity to explain more about what was said and continue to regurgitate the accusations made by the child." "In general, a matter of reasonable trial strategy does not amount to ineffective assistance of counsel. And, the decision

---

[17] (Citations and punctuation omitted.) *Martin v. State*, 310 Ga. 658, 665 (5) (852 SE2d 834) (2020), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984), *Walker v. State*, 301 Ga. 482, 489 (801 SE2d 804) (2017).

11

not to object usually is a matter of strategy."[18] Moreover, as discussed in Division 2, Ramirez-Cortiz has not shown that the result of the trial would have been different had he objected.

Accordingly, the trial court did not err by denying the motion for new trial on the basis of ineffective assistance of counsel.

4. Finally, Ramirez-Cortez alleges that the trial court erred by admitting evidence of the prior acts he committed against B. M., I. G., and M. M.[19] This enumeration provides no basis for reversal.

Prior to trial, the State filed a notice of intent to present evidence of prior bad acts Ramirez-Cortez had committed against B. M. pursuant to OCGA § 24-4-414 (a) ("Rule 414") and against I. G. and M. M. pursuant to OCGA § 24-4-404 (b) (Rule 404"). At the hearing, the State advised the trial court that it sought to use the prior acts evidence to show absence of mistake or accident, motive, opportunity, intent, and knowledge. At the conclusion of the hearing, the trial court found the evidence admissible to prove motive, knowledge, intent, and absence of mistake or accident,

---

[18] (Citations omitted.) *Vanstavern v. State*, 293 Ga. 123, 125 (3) (a) (744 SE2d 42) (2013).

[19] Ramirez-Cortez also argues that admission of evidence of prior acts he committed against E. D. was erroneous. But the trial court excluded that evidence.

and, with regard to B. M. to prove a disposition towards sexual conduct with minors. The court applied the balancing test required by OCGA § 24-4-403 ("Rule 403"), and found that the probative value of the evidence outweighed the risk of unfair prejudice, admitting the evidence.

(a) *Extrinsic act involving B. M.* B. M. testified that approximately seventeen years before trial, when she was approximately four years old, Ramirez-Ortiz sat her on his lap and "began to touch [her] inappropriately"; he "put his hands on [her] vagina . . . [and] was moving back and forth, like thrusting motions." B. M. could feel his penis on the outside of her clothing on the side of her buttock while he was thrusting. Ramirez-Ortiz lived with B. M. and her family at the time.

Rule 414 provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense of child molestation *shall be admissible* and may be considered for its bearing on any matter to which it is relevant."[20] This provision "supersede[s] the provisions of . . . Rule 404[] in sexual assault and child molestation cases and create[s] a 'rule

---

[20] (Emphasis supplied). An "offense of child molestation" is defined as "any conduct or attempt or conspiracy to engage in . . . [a]ny crime that involves contact between any part of the accused's body . . . and the genitals or anus of a child[.]" OCGA § 24-4-414 (d) (2).

13

of inclusion, with a strong presumption in favor of admissibility. . . . Thus, the State can seek to admit evidence under th[is] provision[] for any relevant purpose, including propensity."[21]

> As this Court has held, under OCGA § 24-4-414 (a), showing a disposition toward [child] molestation is a relevant purpose and not unfairly prejudicial in light of the nature of that conduct. Thus, evidence that a defendant engaged in child molestation in the past is admissible to prove that the defendant has a disposition of character that makes it more likely that he did commit the act of child molestation charged in the instant case. Even so, evidence that is admissible under these statutes may be excluded if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. The determination as to whether to exclude evidence for any of these reasons calls for a common sense assessment of all the circumstances surrounding the previous offense, including prosecutorial need, overall similarity between the previous act and the charged offense, as well as temporal remoteness. Indeed, exclusion of otherwise probative and relevant evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly. Ultimately, a trial court's decision on whether to admit

---

[21] (Citations and punctuation omitted.) *Dixon v. State*, 341 Ga. App. 255, 258 (1) (800 SE2d 11) (2017), citing *Steele v. State*, 337 Ga. App. 562, 566 (3), n.5 (788 SE2d 145) (2016), *Dority v. State*, 335 Ga. App. 83, 95 (3) (780 SE2d 129) (2015).

14

evidence under one of these statutes will be overturned only where there is a clear abuse of discretion.[22]

Here, the evidence of Ramirez-Ortiz's actions against B. M. "showed that he had the propensity, as well as the motive and intent, to engage in offenses of child molestation, [and therefore] the prior offenses evidence met the relevancy requirement of Rule 414 (a)."[23]

Our analysis does not end there, however; "we must [also] evaluate whether the trial court abused its discretion under Rule 403 in admitting evidence of [Ramerez-Ortiz's] prior [instance] of child molestation."[24] When "reviewing the admission of evidence under Rule 403, we look at the evidence in a light most favorable to its

---

[22] (Citations and punctuation omitted.) *State v. McPherson*, 341 Ga. App. 871, 874-875 (800 SE2d 389) (2017). See *Olds v. State*, 299 Ga. 65, 76 (2) (786 SE2d 633) (2016) ("When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence. [In contrast,] the more strongly an issue is contested, the greater the justification for admitting other act evidence bearing on the point.") (citation, punctuation and footnote omitted).

[23] *Wilson v. State*, ___ Ga. ___, ___ (1) (d) (860 SE2d 485) (2021), citing *Dixon*, 350 Ga. App. at 213-214 (1) (holding that evidence of a prior child molestation was relevant to show "intent, identity, and propensity to commit the crimes").

[24] *Wilson*, ___ Ga. at ___ (2).

15

admission, maximizing its probative value and minimizing its undue prejudicial impact."[25]

> Further, when applying Rule 403 balancing to evidence of prior offenses of child molestation, the court must take into account that such evidence is naturally prejudicial. However, generally, it is not *unfairly* prejudicial; rather it is prejudicial for the same reason it is probative: it tends to prove the defendant's propensity to molest children. . . . Finally, when applying Rule 403 balancing to prior child molestation offenses, the trial court must make a common sense assessment of all the circumstances that may logically bear on the probative or prejudicial value of the evidence, including the need for the evidence, the overall similarity between the prior offenses of molestation and the charged conduct, and the temporal remoteness of the prior offenses.[26]

Ramirez-Ortiz argues that the prejudicial effect of the evidence of the prior acts against B. M. outweighed its probative value because (1) the State failed to provide a prosecutorial need for the admission of the evidence regarding B. M.; (2) the prior acts were insufficiently similar to the charged acts; and (3) the prior acts were too temporally remote. We disagree.

---

[25] *Morgan v. State*, 307 Ga. 889, 897-898 (3) (d) (838 SE2d 878) (2020).

[26] (Citations omitted; emphasis supplied.) *Wilson*, ___ Ga. at ___ (2).

(i) *Prosecutorial need*. Ramirez-Ortiz argues that because there was no allegation that he accidentally or mistakenly touched the victim and he made no such claim, the State failed to demonstrate that the evidence of the prior acts against B. M. was relevant for the purpose of showing accident or absence of mistake. But regardless of whether Ramirez-Ortiz argued that the touching was an accident, the State was still required to show that his actions were intentional. And, as the trial court concluded, the evidence also demonstrated motive and knowledge. Accordingly, "the trial court was authorized to find that the prosecutor's need increased the probative value of the prior child molestation evidence."[27]

(ii) *Similarity of the prior acts to the charged offenses*. In both the prior act involving B. M. and the charged crime, Ramirez-Ortiz touched the young girls (four and five years of age, respectively) in a home where he lived; he touched B. M. on her vagina, and he touched the victim in the instant case on her vagina, buttocks, and breasts. Accordingly, the trial court did not abuse its discretion by finding that the incidents were sufficiently similar.[28]

_____

[27] Id. at ____ (2) (a) (iv).

[28] See *Dixon*, 341 Ga. App. at 262 (1) (b) (holding that prior molestations were sufficiently similar to the charged offenses because each involved "inappropriate sexual conduct" between the defendant and a similarly aged child); *Eubanks v. State*,

(iii) *Temporal remoteness*. The 17-year gap between Ramirez-Ortiz's actions against B. M. and the victim in this case was relatively long. But

> Rule 414 imposes no time limit on prior offenses for which evidence may be admitted, although remoteness in time may decrease probative value under Rule 403. Sufficient factual similarity of prior child molestation offenses to the charged offense can outweigh concerns of remoteness in time. As a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding very substantial lapses of time in relation to the charged offense or offenses. In this case, the substantial similarities between the prior offenses of child molestation and the charged offenses, as just discussed, allowed the trial court to assign substantial probative value to the prior offenses, despite the lapse in time.[29]

Considering "the evidence presented on each of the above factors and viewing the evidence, as we must, in the light most favorable to its admission, we cannot say that the trial court abused its discretion in determining that the probative value of the

---

332 Ga. App. 568, 569-570 (1) (774 SE2d 146) (2015) (holding that prior acts were sufficiently similar to the charged offenses because each involved acts against minor girls of similar ages and had similar allegations).

[29] (Citations and punctuation omitted.) *Wilson*, ___ Ga. at ___ (2) (a) (iii).

18

prior child molestation evidence was not substantially outweighed by the danger of unfair prejudice."[30]

(b) *Extrinsic acts involving I. G. and M. M.* At trial, I. G. testified that in November 2011, when she was nineteen or twenty years old, Ramirez-Ortiz touched her inappropriately three times at a Thanksgiving gathering at Paz's house. The first time, Iris felt him grab her butt, and she assumed it was an accident. Later that same day, he "let himself fall and grabbed [her] again." The third time, he came towards her "really fast" and touched her vagina as she bent down to retrieve a bag. M. M., the victim's mother, testified that in 2012, when she was approximately 32 years old, Ramirez-Ortiz slapped her buttocks with his hand at a party at Paz's house.

Under Rule 404 (b),

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The party offering evidence under Rule 404 (b) must show three things: (1) that the evidence is relevant to an issue in the case other than

---

[30] Id.

the defendant's character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.[31]

The relevance analysis in the first part is governed by

OCGA § 24-4-401 ("Rule 401"), which defines "relevant evidence" as evidence that "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." This is a binary question — evidence is either relevant or it is not.[32]

For the second part of the test, we apply the balancing test set forth in Rule 403, which we have addressed in Division 4 (a), supra.[33] "The third part of the test is a preliminary question of fact for the trial court. Other acts evidence may be admitted if the court concludes that the evidence is sufficient for the jury to find by a preponderance of the evidence that the other act was committed."[34] [A] trial court's

---

[31] *Strong v. State*, 309 Ga. 295, 300 (2) (a) (845 SE2d 653) (2020).

[32] Id. at 301 (2) (a).

[33] See id.

[34] (Punctuation omitted.) Id.

decision to admit evidence pursuant to OCGA § 24-4-404 (b) is reviewed for a clear abuse of discretion. . . ."[35]

In this case, Ramirez-Ortiz does not argue that the State failed to satisfy the third part of the Rule 404 (b) test. Accordingly, we focus our analysis on the first two parts.

(i) *Relevance*. "Evidence that tends to prove [Ramirez-Ortiz's] intent in this case could be relevant because he put his intent at issue by pleading not guilty, and he did not take any affirmative steps to relieve the State of its burden to prove intent."[36] And if a defendant's intent to commit the charged offense is at issue, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense."[37] "Where the state of mind required for both offenses is the same, the extrinsic crime is relevant to

---

[35] *Brannon v. State*, 298 Ga. 601, 606 (783 SE2d 642) (2016).

[36] *Kirby v. State*, 304 Ga. 472, 480 (4) (a) (819 SE2d 468) (2018).

[37] (Punctuation omitted.) Id., quoting *United States v. Beechum*, 582 F2d 898, 911 (5th Cir. 1978).

21

the charged offense. . . . The test is to ask: under the facts of the case, is there *any* danger that a rational jury could find that although the defendant committed the objective, charged acts, he did not intend to do so?"[38]

Here, the State was required to prove that Ramirez-Ortiz committed the acts against the victim with the intent to arouse his own sexual desires.[39] Similarly, the State had to overcome potential defenses of accident or mistake. The extrinsic acts against I. G. and M. M. are relevant to show intent and to similarly show an absence of mistake or accident and motive. And because the victim's young age at the time of the alleged offenses and at trial impacted both her memory and her interpretation of Ramirez-Ortiz's motive and intent, the relevancy of the extrinsic evidence was increased.

(ii) *403 Balancing Test*. "[W]e find no basis in the record to support the extraordinary remedy of excluding this evidence as unduly prejudicial under OCGA § 24-4-403, particularly given the strong statutory presumption of admissibility and

---

[38] (Citations and punctuation omitted; emphasis in original.) *Chynoweth v. State*, 331 Ga. App. 123, 128 (3) (768 SE2d 536) (2015), quoting *United States v. Zapata*, 139 F3d 1355, 1358 (11th Cir. 1998), Paul S. Milich, Ga. Rules of Evidence, § 11:13, p. 321 (2014-2015).

[39] See OCGA § 16-6-4.

in light of the close similarities between the crimes at issue."[40] Although the extrinsic acts occurred against women, as opposed to the child victim in the instant case, all three cases involved what appeared to be surreptitious touching of the buttocks and/or vaginas of female victims, over their clothing, in Ramirez-Ortiz's home, in a manner that Ramirez-Ortiz could assert was accidental or incidental. And as the trial court found, "[t]here has been no showing that the evidence would confuse the issues, mislead the jury, waste time, or be cumulative of other evidence, or that the probative value of the evidence would otherwise be substantially outweighed by its prejudicial impact."[41]

Accordingly, we find no clear error in the trial court's factual findings regarding the extrinsic acts and no abuse of discretion in its ruling to admit them.

*Judgment affirmed. Reese and Brown, JJ., concur.*

---

[40] (Punctuation omitted.) *McPherson*, 341 Ga. App. at 875 (1).

[41] (Punctuation omitted.) Id.