**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 13, 2017**

# In the Court of Appeals of Georgia

A17A0562. LATTA v. THE STATE.

McFADDEN, Presiding Judge.

After a jury trial, William A. Latta was convicted of child molestation for touching then-six-year-old M. A.'s vagina over her clothes. On appeal, he challenges the sufficiency of the evidence, but we find the evidence authorized the jury verdict. He argues that the trial court erred in admitting other acts evidence, but we find the trial court did not abuse his discretion in admitting the evidence. He argues that the trial court erred in admitting evidence from four witnesses regarding M. A.'s outcry to them, but we find the child hearsay statute, OCGA § 24-8-820, authorized this evidence and Latta, who did not object to the evidence at trial, has not shown plain error. He argues that the trial court erred in charging the jury on impeachment by prior inconsistent statements, but we find the trial court gave the pattern jury

instruction on this issue and Latta, who did not object to the charge at trial, has not shown plain error. He argues that his trial counsel was ineffective in failing to object to the outcry evidence, in failing to request a different jury charge on impeachment, and in failing to seek a mistrial or curative instruction in response to an allegedly improper comment by the state during closing argument, but we find he has not shown that his trial counsel was deficient in any of these respects. For these reasons, we affirm.

1. *Sufficiency of the evidence.*

Latta challenges the sufficiency of the evidence to authorize his conviction. The "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted; emphasis in original). In applying this standard, we do not resolve conflicts in the testimony, weigh the evidence, or draw inferences from the evidence, as those are functions of the jury. See id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [s]tate's case, the jury's

2

verdict will be upheld." *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (citation and punctuation omitted).

Viewed in this light, the evidence showed that on July 26, 2013, Latta was performing repair work on the air conditioner at the house where M. A. lived. While M. A. watched Latta work, her mother stepped into another room. M. A. testified that Latta put her on his lap and touched her with his hand "in [her] legs," and that the touch lasted about a minute. She testified that Latta was not showing her the air conditioner when this occurred.

When M. A.'s mother returned to the room, she saw Latta sitting in a chair; M. A. was between his open legs, and his hands were between the girl's legs and pressed "very low on [her] private part." M. A.'s mother saw Latta pull M. A. toward him and squeeze her. M. A.'s mother immediately "yanked [her] out of [Latta's] arms" and began to yell at Latta in Spanish, which Latta did not understand. M. A.'s mother then called someone on the telephone, and that person told Latta that the mother was accusing him of fondling M. A. and that they were going to call the police. Latta left the house and sat in his parked vehicle for a period of time before leaving at his employer's instruction.

3

M. A.'s mother asked the girl what had happened, and M. A. responded that Latta had "motioned for her to come with his hand" and that he had touched her private part. M. A. then went to a nearby house and told a neighbor that the "air conditioner man" had touched her private area and hurt her. M. A. was crying and visibly upset. Alarmed, the neighbor called 911.

A police officer arrived and saw M. A. crying and holding her hands, crossed, directly over her vagina. He asked the girl if she was in pain, and M. A. responded that she was not in pain but that "a grown man had touched her." The officer testified:

> [M. A.] told me — she clearly stated that her — she was in the kitchen with some of her young siblings, the repairman was sitting on a chair — the air conditioning repairman was sitting on a chair in the kitchen. [M. A.'s] mom walked away. At that time the repairman, this is what she told me, he said, come here. She walked over to the repairman, he said sit in my lap, he picked her up with two hands from what she told me, and she sat in his lap with her back to his face. Then she said that the repairman put his hand on her leg above her knee. At that time, she said that he then took his hand over the top of her vagina. And she was wearing a loose skirt at the time. And she said that he didn't go underneath her underwear or her skirt, but he put his hand on top of her vagina.

4

In a subsequent interview using an anatomical drawing, M. A. indicated to a police detective that Latta touched her vagina. The detective testified that M. A. told him "her mom was in another room, the man told her, hey come here, which she did, he picked her up, put her on his lap, and then touched her on the vagina over the clothing one time." The jury watched a videorecording of this interview.

In a pre-arrest interview with a police detective, Latta denied touching M. A. He conceded, however, that he might have brushed up against M. A., although he did not think that occurred. And he admitted that on a prior occasion he had been accused of improperly touching another person while on a repair job. The state presented other acts evidence about this prior incident, which showed that, while examining a refrigerator leak at a restaurant on a university campus, Latta touched the buttocks of a developmentally-delayed student worker without that person's consent. (This incident is discussed in greater detail in Division 2, infra.)

The evidence authorized the jury to find Latta guilty of child molestation, which occurs when a person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person[.]" OCGA § 16-6-4 (a) (1). We are not persuaded by Latta's argument that the evidence was insufficient to show that he

touched M. A. with the required intent to arouse or satisfy either his or the child's sexual desires. Although, as Latta argues, the law does not presume that a defendant acted with criminal intent, the law nevertheless permits a factfinder to infer the necessary intent from circumstantial evidence. OCGA § 16-2-6; *Burke v. State*, 316 Ga. App. 386, 390 (2) (729 SE2d 531) (2012). "[I]ntent, which is a mental attitude, is commonly detectable only inferentially, and the law accommodates this." Id. (citation and punctuation omitted). Moreover, "[t]he intent with which an act is done is peculiarly a question of fact for determination by the jury[.]" *Grimsley v. State*, 233 Ga. App. 781, 784 (1) (505 SE2d 522) (1998) (citation and punctuation omitted).

The evidence in this case authorized the jury to infer that Latta touched M. A.'s vagina over her clothing and that he intended to arouse his sexual desires or those of M. A. when he did so. There was evidence that Latta specifically called M. A. to him, sat her in his lap, placed his hand on her vagina over her clothes, and held his hand there for up to a minute. The jury reasonably could find from this evidence that Latta touched M. A.'s vagina deliberately, rather than accidentally, and infer that he did so with the intent to sexually arouse himself. See *McMurtry v. State*, 338 Ga. App. 622, 623-625 (1), (2) (791 SE2d 196) (2016); *Ayers v. State*, 286 Ga. App. 898, 900 (1) (a) (650 SE2d 370) (2007).

6

2. *Other acts evidence.*

Latta challenges the trial court's admission of other acts evidence concerning the incident in which Latta touched the buttocks of the student worker. The trial court admitted the other acts evidence under two sections of our new Evidence Code: OCGA § 24-4-404 (b), which provides that "[e]vidence of other crimes, wrongs, or acts" may be admissible for purposes other than "to prove the character of a person in order to show action in conformity therewith," and OCGA § 24-4-413 (a), which provides that "[i]n a criminal proceeding in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense of sexual assault shall be admissible and may be considered for its bearing on any matter to which it is relevant." For the reasons set forth below, the trial court did not abuse his discretion in admitting the evidence under OCGA § 24-4-413 (a). See *Steele v. State*, 337 Ga. App. 562, 565-566 (3) (788 SE2d 145) (2016) (trial court's decision to admit other acts evidence will be overturned only where there is clear abuse of discretion). Accordingly, we need not address the admissibility of the evidence under OCGA § 24-4-404 (b). See *Dixon v. State*, __ Ga. App. __, __ (1) (__ SE2d __) (Case No. A17A0233, decided April 19, 2017) (in sexual assault case, the provisions of

OCGA § 24-4-413 (a) "supercede the provisions of OCGA § 24-4-404 (b)") (citations and footnote omitted).

The other acts evidence showed that, on April 3, 2008, while working in his capacity as a repairman, Latta touched the buttocks of D. H., a mentally-disabled student in a special-needs program at a university. D. H. testified that the touching occurred while she was leaning down to put bottles in a box at her campus job. She stated: "I was working in the cafeteria from Chick-fil-A. I got down. I saw a refrigerator guy. He come — he come near me. Well, he touch me on my butt, but I sat up and he grab my hand and said, let's go out from the doors. After that I told him to let go and I went to [another person]." D. H. reported what had happened, and a campus police officer investigated the incident and interviewed Latta. The officer testified that Latta initially said D. H. had recognized and hugged him, then admitted that he probably had touched D. H. but that it had been accidental and had occurred as he was checking a refrigerator leak that D. H. had reported to him. Latta also told the officer that D. H. had told him she felt uncomfortable during their interaction.

The trial court correctly held that OCGA § 24-4-413 (a) governed the admissibility of the other acts evidence because Latta was accused of an offense of sexual assault and the other acts evidence concerned his commission of another

8

offense of sexual assault. For purposes of OCGA § 24-4-413, the term "offense of sexual assault" includes "[a]ny crime that involves contact, without consent, between any part of the accused's body . . . and the genitals . . . of another person[.]" OCGA § 24-4-413 (d) (2). Latta's act of touching M. A.'s vagina falls within this definition. See *United States v. Seymour*, 468 F3d 378, 385 (II) (A) (2) (6th Cir. 2006) (applying Fed. R. Evid. 413 to admit other acts evidence in case where defendant was accused of child molestation); *United States v. Godfrey*, 611 Fed. Appx. 364, 365 (8th Cir. 2015) (treating evidence that defendant had touched a 13- or 14-year-old girl's vagina over her clothing as a sexual assault for purposes of applying Fed. R. Evid. 413 to admit other acts evidence). The term "offense of sexual assault" also includes conduct that would constitute sexual battery in violation of OCGA § 16-6-22.1. OCGA § 24-4-413 (d) (1). Latta's act of touching D. H.'s buttocks — if he did so intentionally — without her consent constitutes the offense of sexual battery under OCGA § 16-6-22.1.

Latta argues that there is no evidence that he intentionally touched D. H.'s buttocks, and he points to evidence that he was never charged with a crime in connection with that other act. But as held in cases interpreting the Federal Rules of

9

Evidence, which we look to for guidance in construing our new Evidence Code, see *Parker v. State*, 296 Ga. 586, 592 (3) (a) (769 SE2d 329) (2015),

> criminal charges . . . are not required for the admission of other acts evidence . . . . Indeed, a prior acquittal of a criminal charge will not necessarily preclude admission of other act[s] evidence . . . . Finally, a trial court need not make a preliminary finding that the alleged prior similar conduct in fact occurred before admitting it into evidence. Instead, a trial court's decision to admit other act[s] evidence will be affirmed if a jury could find by a preponderance of the evidence that the defendant committed the act.

*Dixon*, supra, __ Ga. App. at __ (1) (a) (citations and punctuation omitted). From the other acts evidence, a jury could have concluded by a preponderance of the evidence that Latta committed the offense of sexual battery in violation of OCGA § 16-6-22.1 by intentionally touching D. H.'s buttocks without her consent. See *Thompson v. State*, 245 Ga. App. 396, 398 (3) (537 SE2d 807) (2000) (victim's testimony that defendant touched her buttocks as she was climbing a ladder to get out of a swimming pool, and evidence that victim was visibly upset afterward, was sufficient to authorize jury to find defendant had committed offense of sexual battery). The evidence that Latta touched D. H. thus was evidence of an "offense of sexual assault" admissible as an other act under OCGA § 24-4-413.

Citing OCGA § 24-4-403, Latta argues that the probative value of the other acts evidence was substantially outweighed by its prejudicial value. A trial court may exclude relevant evidence under OCGA § 24-4-403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Whether to do so, however,

> lies within the discretion of the trial court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness. . . . [T]he exclusion of evidence under OCGA § 24-4-403 is an extraordinary remedy which should be used only sparingly. The major function of OCGA § 24-4-403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. In close cases, the balance should be struck in favor of admissibility.

*Dixon*, supra, __ Ga. App. at __ (1) (b) (citations and punctuation omitted).

In reviewing the trial court's application of OCGA § 24-4-403 in this case, we assume without deciding that the evidence admitted under OCGA § 24-4-413 should be evaluated under the same type of balance as evidence admitted under OCGA § 24-4-404 (b), rather than under a balance more generous to its admission. See generally

11

*Dixon*, supra, __ Ga. App. at __ (1) (b) (discussing open question of "whether evidence admitted under [OCGA § 24-4-413] should be evaluated under a different type of Rule 403 balance that weighs in favor of admission") (citations and punctuation omitted). The evidence of the sexual battery against the student worker had probative value in countering Latta's accident defense, because it showed that the instance with M. A. was not the first time Latta had claimed accident after touching a vulnerable person in a sexual manner while working on a repair job. This fact made it less probable that Latta touched M. A. accidentally and more probable that he touched her to arouse or satisfy his sexual desires. See *Olds v. State*, 299 Ga. 65, 75 (2) (786 SE2d 633) (2016) ("Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value [of evidence]."). "[W]e find no clear abuse of the trial court's discretion in determining that the evidence was more probative . . . than prejudicial." *Silvey v. State*, 335 Ga. App. 383, 388 (1) (b) (780 SE2d 708) (2015).

We disagree with Latta's assertion that we should remand this issue to the trial court in light of our Supreme Court's decision in *Olds v. State*, supra, 299 Ga. 65. The Court in *Olds* remanded an appeal to this court for reconsideration after clarifying an

earlier decision upon which this court had relied extensively in ruling on the appeal. Id. at 77 (3). That circumstance does not exist here.

3. *Outcry statements*.

Latta argues that the trial court erred in admitting evidence of M. A.'s out-of-court outcry statements to four witnesses — M. A.'s mother, a neighbor, and two law enforcement officers. He argues that the statements were inadmissible because they did not fall within a hearsay exception, there was not sufficient indicia of their reliability, and they did not meet the admissibility requirements for prior consistent statements. Because Latta did not object to the statements at trial, we review his claims only for plain error. See OCGA § 24-1-103 (a), (d). Latta has not shown plain error.

First, the statements met the requirements for admission set forth in the applicable version of Georgia's child hearsay statute, OCGA § 24-8-820,[1] which provides:

> A statement made by a child younger than 16 years of age describing any act of sexual contact or physical abuse performed with

---

[1] OCGA § 24-8-820 was amended effective July 1, 2013. See Ga. L. 2013, pp. 222, 237, § 13. The crime at issue occurred on July 26, 2013, after the effective date of this amendment.

or on such child by another . . . shall be admissible in evidence by the testimony of the person to whom made if the proponent of such statement provides notice to the adverse party prior to trial of the intention to use such out-of-court statement and such child testifies at the trial . . . and, at the time of the testimony regarding the out-of-court statements, the person to whom the child made such statement is subject to cross-examination regarding the out-of-court statements.

The person who made the statements, M. A., was younger than 16 years of age; the statements described an act of sexual contact performed on her by another; the state provided the required notice to Latta; M. A. testified at trial; and the persons to whom M. A. made the statements were subject to cross-examination about them. It is not error for a trial court to admit an out-of-court outcry statement that meets the statutory requirements of OCGA § 24-8-820. *McMurtry v. State*, 338 Ga. App. 622, 627 (4) (a) (791 SE2d 196) (2016).

Moreover, the applicable version of OCGA § 24-8-820, unlike its predecessors, does not require a showing that the out-of-court statement has indicia of reliability, and this court has "decline[d] to add judicially a requirement that the legislature did not include." *McMurtry*, supra at 627 (4) (a) (citations omitted).

Finally, this court has made clear, in construing prior versions of the child hearsay statute, that statements admissible under the child hearsay statute do not need

14

to meet the admissibility requirements for prior consistent statements. As we have explained:

> Generally speaking, unless a witness's veracity has affirmatively been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury. The [c]hild [h]earsay [s]tatute, however, is a legislatively-created exception to the general rule prohibiting such hearsay evidence and provides that, so long as certain conditions are met, a statement made by a child describing any act of sexual contact is admissible in evidence by the person to whom the statement was made. As such, the [c]hild [h]earsay [s]tatute actually contemplates testimony from both the child and those witnessing the child's later reaction, even if the hearsay may be "bolstering."

*Laster v. State*, 340 Ga. App. 96, 98-99 (1) (796 SE2d 484) (2017) (citations, punctuation, and footnote omitted). Accord *Davis v. State*, 303 Ga. App. 799, 800 (2) (694 SE2d 381) (2010); *Whitaker v. State*, 293 Ga. App. 427, 429 (2) (667 SE2d 202) (2008). And this court has applied this rationale to the version of OCGA § 24-8-820 applicable to this case, holding, in the context of a claim for ineffective assistance of trial counsel, that where out-of-court statements meet the requirements of OCGA § 24-8-820, their failure to also meet the requirements for admission as prior consistent

15

statements is not a viable ground for challenging them. See *McMurtry*, supra, 338 Ga. App. at 628 (5).

4. *Jury charge.*

Latta argues that the trial court erred in giving the jury the following charge on a witness's prior inconsistent statements:

> Your assessment of a trial witness's credibility may be affected by comparing or contrasting that testimony to statements or testimony of that same witness before the trial started. It is for you to decide whether there is a reasonable explanation for any inconsistency in a witness's pre-trial statements and testimony when compared to the same witness's trial testimony. As with all issues of witness credibility, you the jury must apply your common sense and reason to decide what testimony you believe or do not believe.

Latta waived appellate review, including plain error review, of his claim that the trial court erred in giving this charge, which tracked the language of the pattern jury instruction, Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.47, because he "submitted a written request for the pattern charge that was given . . . and stated no objection to the trial court's agreeing to give the charge as requested." *Williams v. State*, 299 Ga. 447, 449 (2) (788 SE2d 347) (2016).

5. *Ineffective assistance of counsel.*

16

Latta argues that his trial counsel provided ineffective assistance. To prevail on this claim, he

> must show [both] that trial counsel's performance [was deficient in that it] fell below a reasonable standard of conduct and that [it was prejudicial because] there existed a reasonable probability that the outcome of the case would have been different had it not been for counsel's deficient performance. If [Latta] fails to [prove] either prong of the [two-part] test, this relieves the reviewing court of the need to address the other prong.

*Scott v. State*, 290 Ga. 883, 889 (7) (725 SE2d 305) (2012) (citations and punctuation omitted). As detailed below, Latta has not shown that his trial counsel's performance was deficient.

(a) *Failure to object to testimony about outcry statements.*

Latta argues that his trial counsel was ineffective for failing to object to the admission of evidence of M. A.'s out-of-court outcry statements on grounds of "hearsay . . . and improper prior consistent statement." But "[a]s discussed in Division [3], supra, given that the out-of-court statements were properly admitted under the applicable child hearsay statute, OCGA § 24-8-820, trial counsel had no grounds for challenging this testimony and cannot be adjudged ineffective for failing to object to it." *McMurtry*, supra, 338 Ga. App. at 628 (5) (citation and punctuation omitted). See

17

*Geiger v. State*, 295 Ga. 648, 654 (5) (c) (763 SE2d 453) (2014) (failure to raise meritless objection cannot be evidence of deficient performance).

(b) *Requesting current pattern jury charge rather than former pattern jury charge on prior inconsistent statements.*

Latta argues that his trial counsel was deficient in requesting the current pattern jury charge on prior inconsistent statements (set forth in Div. 4, supra), which derives from OCGA § 24-6-613 of Georgia's new Evidence Code, rather than a former pattern jury charge on the issue. Although he asserts that the new pattern charge is "wrong," the new pattern charge is not an incorrect statement of the law. And pretermitting whether the former pattern charge's language is a more precise or comprehensive statement of the law than the current pattern charge, Latta has not shown that his trial counsel was deficient in requesting the pattern charge. To overcome the strong presumption that his trial counsel's performance fell within the wide range of professional assistance, Latta must show that no reasonable lawyer would have requested the current pattern charge instead of the former pattern charge. See *Simon v. State*, 321 Ga. App. 1, 7 (3) (740 SE2d 819) (2013). "Where, as here, the jury was properly instructed on the law[,] counsel cannot be deemed ineffective for failing to seek alternative instructions." Id. (citation and punctuation omitted). See

18

also *Jarrett v. State*, 299 Ga. App. 525, 531 (7) (a) (683 SE2d 116) (2009) (finding claim that trial counsel was ineffective in failing to request particular jury charge to be meritless when trial court gave pattern charge on issue).

(c) *Failure to seek mistrial or curative instruction.*

Latta argues that his trial counsel was deficient for failing to seek a mistrial or curative instruction after the prosecutor made what Latta contends was an improper comment about his silence in violation of the Fifth Amendment. The comment was not improper.

The prosecutor, in closing argument, commented on the recorded statement that Latta had made to the detective in a pre-arrest interview. Referring to that statement, which had been played to the jury at trial, the prosecutor said:

> Sometimes the silence says more than the words. There are three points during the Defendant's statement where he takes much longer than everything else to answer questions. The three points in the Defendant's statement where he takes longer to answer the questions are did you tell [M. A.] to come here. He pauses and says, I think I said look here. When he's asked whether he had moved [M. A.] at all, there's a pause, and he eventually says, no. And the longest pause is after he is asked whether he had [M. A.] in his lap. At that point it's 20 seconds — before the detective breaks the silence and says, I don't know why you're having

19

so much trouble answering this question. It's not his exact words, but that's essentially what he says. And then he says, no, no.

This was not an improper comment on Latta's exercise of his Fifth Amendment right to remain silent, because the recording of Latta's interview shows that he did not exercise that right. Latta

> did not expressly invoke the privilege against self-incrimination in response to the officer's question[s]. It has long been settled that the privilege generally is not self-executing and that a witness who desires its protection must claim it. Although no ritualistic formula is necessary in order to invoke the privilege, a witness does not do so by simply standing mute.

*Salinas v. Texas*, __ U. S. __, __ (133 SCt 2174, 186 LE2d 376) (2013) (citations and punctuation omitted). There are two exceptions to this requirement. "[A] criminal defendant need not take the stand and assert the privilege at his own trial." Id. at __ (II) (A). And "a witness' failure to invoke the privilege must be excused where governmental coercion makes his forfeiture of the privilege involuntary." Id. at __ (II) (A). Neither exception applies to the circumstances of this case. Latta did not testify at his trial, and his interview with the detective was voluntary. See id. at __ (II) (A) (defendant cannot benefit from second exception, regarding involuntary forfeiture of

privilege against self-incrimination, where interview was voluntary). The trial court ruled at a pre-trial *Jackson-Denno* hearing that the interview was voluntary and noncustodial, and Latta has not challenged this ruling on appeal. Consequently, the Fifth Amendment did not preclude the prosecutor's comment.

In his reply brief, Latta argues for the first time that the prosecutor's comment also violated Latta's rights under the Georgia Constitution, which states that "[n]o person shall be compelled to give testimony tending in any manner to be self-incriminating." Ga. Const. of 1983, Art. I, Sec. I, Par. XVI. This court "generally will not consider arguments raised for the first time in a reply brief," *Minor v. State*, 328 Ga. App. 128, 134 (2) (b) (citation omitted), and, in any event, Latta has offered no persuasive argument that the Georgia Constitution's privilege against self-incrimination applies to the circumstances of this case even though the Fifth Amendment's similar privilege does not apply.

We note that, "[p]rior to the effective date of Georgia's new Evidence Code, a prosecutor was prohibited from commenting on a defendant's pre-arrest silence per *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991). . . . *Mallory* was decided not on constitutional grounds but rather based on former OCGA § 24-3-36." *Bradford v. State*, 299 Ga. 880, 886 (7) n. 7 (792 SE2d 684) (2016) (citation and punctuation

21

omitted). Assuming the continued validity of *Mallory* under the new Evidence Code, see generally *Tran v. State*, __ Ga. App. __, __ (2) (c) & n. 7 (__ SE2d __) (Case No. A16A1654, decided March 8, 2017) (applying *Mallory* to case governed by new Evidence Code but noting that Georgia's Supreme Court has expressed no opinion on its continued validity), Latta has not argued that the rule set forth in *Mallory* prohibited the prosecutor's comment. Moreover, any such argument would be meritless, because Latta responded to the detective's questions. See *Carter v. State*, 324 Ga. App. 118, 126 (2) (b) (749 SE2d 404) (2013) (declining to apply principle in *Mallory* prohibiting mention of defendant's silence where defendant willingly talked to detective in pre-arrest interview).

Because the prosecutor did not make an improper comment, Latta's trial counsel was not deficient in failing to seek a mistrial or curative instruction. See *Dority v. State*, 335 Ga. App. 83, 97 (4) (a) (780 SE2d 129) (2015); *Carter*, supra at 126 (2) (b).

*Judgment affirmed. Branch and Bethel, JJ., concur*.