**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**December 4, 2023**

# In the Court of Appeals of Georgia

A23A1737. THE STATE v. SHALGHEEN.

MERCIER, Chief Judge.

In this case involving rape, sexual battery, and related charges, the State appeals the trial court's grant of Hasaan Shalgheen's motion to suppress certain evidence of "other acts," contending that this evidence, which relates to Shalgheen's alleged sexual assault of four prior victims, is admissible at a future trial to show propensity under OCGA § 24-4-413. For the reasons set forth below, we agree and reverse.[1]

We begin with the alleged facts on which the current prosecution is premised. The victim, R. C., reported that she met Shalgheen through a dating app. Afterwards, Shalgheen took his car to a carwash where R. C. worked and introduced himself to

---

[1] Shalgheen did not file a response brief in this matter.

R. C. as a spiritual cleanser and healer. Following some discussion, R. C. agreed to have a spiritual cleansing performed on her at Shalgheen's apartment on February 5, 2023. Shalgheen instructed R. C. to arrive alone, wear a white robe, and not be on her menstrual cycle. He also falsely informed R. C. that others would be present in the apartment at the time of the spiritual cleansing. Once at Shalgheen's apartment, R. C. was given a white robe, and she noticed a firearm in open view. Realizing that she was alone with Shalgheen, R. C. became nervous, tried to leave, and asked to reschedule the cleansing. Shalgheen refused, told R. C. that he had to leave for Texas in the near future, and instructed that the cleansing needed to go forward at that time.

As Shalgheen initiated the cleansing, R. C. resisted, and she began to struggle with Shalgheen. Despite being told, "no[,]" by R. C., Shalgheen continued the ritual by penetrating R. C.'s vagina with his penis on two separate occasions. Shalgheen wore a condom during each of these acts, and he disposed of them in a trashcan, while telling R. C. that they would later be burned as part of the ritual. R. C. then left, and once outside of Shalgheen's apartment, she called 911 to report that she had been raped. Police responded, searched Shalgheen's apartment, and recovered the disposed condoms and some of R. C.'s jewelry that had fallen off during her struggle with Shalgheen. R. C. later submitted to a rape exam that revealed visible physical injuries.

Based on this evidence, Shalgheen was indicted for rape, false imprisonment, theft by taking, sexual battery, and battery. As part of pre-trial proceedings, the State filed a notice of intent to introduce other acts evidence of four prior sexual assaults allegedly committed by Shalgheen. At a hearing, the State proffered the following evidence relating to four prior victims of Shalgheen's "cleansing ritual."[2]

*Victim One*: After seeing news coverage regarding Shalgheen's alleged rape of R. C., H. M. contacted the Duluth Police Department to report that she had also been sexually assaulted by Shalgheen. According to the State's proffer, H. M. recounted to police that, sometime between September 2021 and November 2021, she and Shalgheen met as coworkers at a cookware company, and Shalgheen introduced himself as an astrologist and numerologist. Shalgheen advised H. M. that she needed

[2] After confirming that the State had served discovery regarding the other acts on Shalgheen, the trial court allowed the prosecutor to "state in his place" the facts underlying each of the other acts. The State's proffer of evidence was based on police reports and "the video interviews that . . . were conducted by law enforcement in the case and the summaries of those." At the time that the State indicated that it would be making a proffer, Shalgheen did not object to that procedure, and, although he later argued that the victims' statements contained in the proffer lacked credibility, he did not object to the State's *proffer* of that evidence. Under such circumstances in which a timely objection is not made contemporaneously with a prosecutor's evidentiary proffer (and the proffer is allowed by the trial court), that proffer "will be treated on appeal as the equivalent of evidence." *Rank v. Rank*, 287 Ga. 147, 149 (695 SE2d 13) (2010).

a spiritual cleansing to both remove demons and to remedy certain health issues. H. M. agreed and met Shalgheen at a motel, where she had been instructed by Shalgheen to bring a white robe and lingerie. H. M. did not have a white robe, so Shalgheen gave her his shirt to wear. Shalgheen then passed incense over H. M.'s body and sprayed a substance on her vagina. Shalgheen also instructed H. M. to get on her knees on the bed. H. M. questioned Shalgheen about his actions, but he became aggressive and told her to obey him. Shalgheen proceeded to perform oral sex on H. M. and penetrated her vagina with his penis. H. M. told Shalgheen to stop, but he did not. Instead, he told her that it was part of the ritual and that he had become a spirit who was penetrating her. When the ritual was over, Shalgheen instructed H. M. not to tell anyone about the cleansing. H. M. later met Shalgheen on two additional occasions to cleanse demons. H. M. indicated that, prior to calling the Duluth police, she had been too afraid to report the crime.

*Victim Two*: After seeing news coverage of Shalgheen's alleged rape of R. C., C. Q. contacted the Duluth Police Department to report that she had been sexually assaulted by Shalgheen in Texas in December 2022. According to the State's proffer, C. Q. met Shalgheen on a dating app, and C. Q. believed that Shalgheen was an astrologer and spiritual healer. C. Q. paid Shalgheen for a spiritual cleansing service,

and Shalgheen drove to her home in Texas. Shalgheen used incense and oils during the cleansing ritual, and he penetrated C. Q.'s vagina with his penis. After becoming aware of the news story about Shalgheen's arrest in Georgia, C. Q. believed that she had been manipulated and intimidated by Shalgheen and that she was a victim of rape.

*Victim Three*: Subsequent to seeing news coverage of R. C.'s alleged rape, O. P. contacted police to report that Shalgheen had sexually assaulted her in Dunwoody, Georgia in September 2021. According to the State's proffer, O. P. and Shalgheen were coworkers at a cookware company (the same as H. M.). At a gathering at a mutual friend's home, Shalgheen told O. P. that her boyfriend had given her a sexually transmitted disease and that she needed a spiritual cleansing. O. P. agreed and invited Shalgheen to perform the cleansing at her home. Shalgheen instructed O. P. to be alone, to wear a white robe, and to not be on her menstrual cycle for the scheduled cleansing. When Shalgheen arrived, he lit incense and instructed O. P. to kiss him. She refused and started to cry. Nonetheless, Shalgheen told O. P. to bend over, and he penetrated her vagina with his penis. O. P. pushed Shalgheen away, and Shalgheen told her that she had wasted his time. Before leaving, Shalgheen warned O. P. not to tell anyone about the cleansing because he knew many things about her.

*Victim Four*: Like the other alleged victims, Y. M. contacted police after seeing news coverage of Shalgheen's alleged rape of R. C. According to the proffer, Y. M. and Shalgheen were coworkers at the same cookware company as some of the other alleged victims, and Y. M. met Shalgheen at a mutual friend's home. Shalgheen introduced himself as an astrologer and numerologist, and he told Y. M. that, based on her birth date, she would benefit from a spiritual cleansing. Y. M. agreed, and her first cleansing occurred in a friend's home sometime between October 2021 and November 2021. In a bedroom, Shalgheen instructed Y. M. to put her knees on the bed. Shalgheen then sprayed Y. M. with incense and began touching his penis. Though Y. M. thought this behavior was odd, she nonetheless arranged for a second cleansing at her apartment, while her boyfriend remained in another room. This time Shalgheen asked Y. M. to remove her underwear and lie on the bed. While Y. M. repeated a prayer to remove evil spirits, Shalgheen penetrated Y. M.'s vagina with his penis. Y. M. pushed Shalgheen off of her and told him to stop. Afterwards, Shalgheen admonished Y. M. not to tell anyone what happened between them.

Following the hearing at which this evidence was proffered, the trial court entered an order finding all four acts to be inadmissible. Specifically, the trial court found that the probative value of the other acts evidence "was outweighed by its

6

prejudicial effect" for several reasons: (1) the State relied on videotaped and transcribed statements made to police rather than doing its own investigation and interviewing the victims separately; (2) the State did not present sufficient evidence regarding the nature of the news reports seen by the victims prior to the time they contacted police, thereby drawing into question the credibility of the prior victims' statements;[3] (3) there was no evidence that the prior allegations were being further investigated; and (4) Shalgheen had neither been arrested nor indicted for any of the alleged offenses. Based on these considerations, the trial court concluded: "Even under a rule of inclusion, rather than exclusion and balancing analysis, and even under a preponderance of the evidence standard, this Court remain[s] unsettled and unsatisfied with the State's proffer regarding the other alleged acts." This appeal followed.

As an initial matter, OCGA § 24-4-413 (a), sometimes referred to a Rule 413, provides: "In a criminal proceeding in which the accused is accused of an offense of

---

[3] The State did explain that, when Shalgheen was arrested for the crimes underlying the current prosecution, "there was some news stories about it because of the headline that the defendant was a witch doctor or a medicine man and the news did run stories." For his part, Shalgheen argued that the news reports included information about the use of white robes and incense, but he also did not produce any of the news reports.

sexual assault, evidence of the accused's commission of another offense of sexual assault *shall be admissible* and may be considered *for its bearing on any matter to which it is relevant.*" (Emphasis supplied.) Based on this explicit statutory language, Rule 413 is "a rule of inclusion, with a strong presumption in favor of admissibility, and the State can seek to admit evidence under [this] provision[] for any relevant purpose, including propensity." *Robinson v. State*, 342 Ga. App. 624, 634 (4) (a) (805 SE2d 103) (2017) (citation and punctuation omitted).

Once determined to be relevant, other acts evidence falling under Rule 413 should be excluded only if it violates the balancing test of OCGA § 24-4-403.

> [U]nder OCGA § 24-4-403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. . . . [E]vidence admissible under OCGA [§] 24-4-413 . . . may be excluded under Rule 403 if the trial court concludes that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

*Mulkey v. State*, 366 Ga. App. 427, 431 (883 SE2d 173) (2023) (citations and punctuation omitted).

Balancing the probative value of evidence, which "is a combination of its logical force to prove a point and the need at trial for evidence on that point[,]"

8

*Harris v. State*, 314 Ga. 238, 262 (3) (a) (875 SE2d 659) (2022) (citation and punctuation omitted), with the danger of *unfair* prejudice requires careful consideration of the evidence in question. This balancing "determination lies within the discretion of the [trial] court and calls for a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." *Bradshaw v. State*, 296 Ga. 650, 657-658 (3) (769 SE2d 892) (2015) (citation and punctuation omitted).[4]

It has also been emphasized that

the major function of OCGA § 24-4-403 is to exclude matters of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect due to the danger that the jury may convict the defendant not for the offense charged but for the extrinsic offense, because the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged.

*McAllister v. State*, 351 Ga. App. 76, 81 (1) (830 SE2d 443) (2019) (citations and punctuation omitted). As a result,

[e]xclusion is appropriate only when the demonstrable probative value . . . is substantially outweighed by the danger of unfair prejudice. Not just a little outweighed, but substantially. And prejudice is not unfair

---

[4] Shalgheen does not challenge the other acts evidence on the grounds of similarity or temporal remoteness.

simply because it tends to inculpate the defendant in an awful crime. Rather, it is unfair only if it creates an undue tendency to suggest decision on an improper basis such as an emotional one.

*State v. Ippisch*, 366 Ga. App. 501, 504 (883 SE2d 162) (2023) (citations, punctuation, and emphasis omitted). See also *State v. Atkins*, 304 Ga. 413, 423 (2) (c) (819 SE2d 28) (2018) (exclusion of evidence under Rule 403 "is an extraordinary remedy which should be used only sparingly since it permits the trial court to exclude concededly probative evidence") (citation and punctuation omitted).

Additionally, it must be remembered that

a trial court need not make a preliminary finding that the alleged prior similar conduct in fact occurred before admitting it into evidence. Instead, a trial court's decision to admit other act evidence will be affirmed if a jury could find by a preponderance of the evidence that the defendant committed the act.

*Dixon v. State*, 341 Ga. App. 255, 259 (1) (a) (800 SE2d 11) (2017) (citations and punctuation omitted). Finally, when reviewing the admission of evidence under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact. See *Anglin v. State,* 302 Ga. 333, 337 (3) (806 SE2d 573) (2017).

Applying all of this precedent to the case at hand leads to the conclusion that the trial court abused its discretion by excluding the other acts evidence offered by

10

the State. See *Robinson*, 342 Ga. App. at 634 (4) (a) ("trial court's decision to admit [or exclude] other acts evidence will be overturned only [when] there is a clear abuse of discretion."). None of the reasons relied upon by the trial court support exclusion of the evidence, which is strikingly similar to the current alleged crime, temporally close in time, and needed by the prosecution to show R. C.'s lack of consent.

The mere fact that the State, at the suppression hearing, offered only the statements of the four prior victims from their police interviews does not mandate exclusion. "[A]ll that is required is that the State show that a jury could find by a preponderance of the evidence that the defendant committed the [prior] act, which [each victim's] testimony [would authorize]." *Ippisch*, 366 Ga. App. at 506 (citation and punctuation omitted). See also OCGA § 24-14-8 ("The testimony of a single witness is generally sufficient to establish a fact."). And, although the trial court expressed concerns regarding the credibility of the prior victims' statements contained in the police reports, the Rule 413 evidence offered by the State, when viewed in the light most favorable to admission, supports its inclusion, not exclusion. *Anglin*, 302 Ga. at 337 (3).[5]

_____

[5] We note that the trial court was not questioning the existence or accuracy of the contents of the State's proffer, only whether the statements contained in the proffered evidence were credible.

11

In addition, the lack of a showing by the State that Shalgheen had been arrested

or indicted for the prior acts does not require their exclusion.

> This argument is directly refuted by our precedent, which holds that "'criminal charges are not required for the admission of other acts evidence'" under OCGA § 24-4-413. *Latta v. State*, 341 Ga. App. 696, 700 (2) (802 SE2d 264) (2017) (in child molestation case, witness's testimony about defendant's previous acts of molestation, which were reported to police but never charged as crimes, was admissible) (citation omitted). Accord *Dixon*[, 341 Ga. App. at 259 (1) (a)] (evidence of defendant's prior act of sexual battery, which was reported but never charged, was admissible in child molestation case). Rather, it is enough that the evidence would enable a jury to find by a preponderance of the evidence that the defendant committed the other offense. *Latta*, 341 Ga. App. at 700-01 (2); *Dixon*, 341 Ga. App. at 259 (1) (a). And that standard is met here. The State proffered [the prior victims'] testimony detailing the assault[s], and the police report[s reflect that Shalgheen used artifice and deceit to have sex with the victims without consent]. If offered at trial, this evidence would be sufficient for a jury to find by a preponderance of the evidence that [Shalgheen sexually assaulted the prior victims]. See *Dixon*, 341 Ga. App. at 258-59 (1) (a) (even a single witness's uncorroborated testimony can provide adequate basis for jury to find that prior act occurred).

*State v. Berrien*, 364 Ga. App. 217, 226 (2) (a) (874 SE2d 430) (2022).

Moreover, we must note that the trial court held only that the prejudicial value

of the other acts evidence outweighed its probative value. But, as discussed above,

the prejudicial effect must *substantially* outweigh the probative value. That is not the

case here. The prior acts were remarkably similar and close in time to the current act

12

for which Shalgheen is being prosecuted. And, in cases such as this, it must be remembered that

> [o]ne of Congress['s] expressed rationales for Rule 413[, upon which Georgia's rule is modeled,] is the need for corroborating evidence when the alleged rapist claims consent, and there are no witnesses other than the defendant and the alleged victim. Just as evidence corroborating a victim's testimony concerning rape would have a tendency to disprove a defense of consent, [which is at issue here,] it would similarly serve to disprove a defense that the victim had a motive to fabricate allegations of rape[, which is also intertwined with the consent defense].

*Marlow v. State*, 337 Ga. App. 1, 4 (1) (b) (785 SE2d 583) (2016) (citations and punctuation omitted), overruled on other grounds by *Quiller v. State*, 338 Ga. App. 206, 209 n.3 (789 SE2d 391) (2016).

For all of these reasons, the trial court abused its discretion by excluding the other acts evidence in this case.

*Judgment reversed. Miller, P. J., and Hodges, J., concur*.